RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)
File Name: 14a0177p.06

# UNITED STATES COURT OF APPEALS

FOR THE SIXTH CIRCUIT

─────────────────

ROSLYN CURRIER,

*Plaintiff-Appellant,*

*v.*

No. 13-5943

FIRST RESOLUTION INVESTMENT CORP.,

*Defendant-Appellee.*

Appeal from the United States District Court
for the Eastern District of Kentucky at London.
No. 6:12-cv-00223—David L. Bunning, District Judge.

Argued: March 13, 2014

Decided and Filed: August 8, 2014

Before: GRIFFIN, WHITE, and STRANCH, Circuit Judges.

─────────────────

**COUNSEL**

**ARGUED:** James Hays Lawson, LAWSON AT LAW, PLLC, Louisville, Kentucky, for Appellant. John R. Tarter, MAPOTHER & MAPOTHER, P.S.C., Louisville, Kentucky, for Appellee. **ON BRIEF:** James Hays Lawson, LAWSON AT LAW, PLLC, Louisville, Kentucky, James R. McKenzie, JAMES R. MCKENZIE ATTORNEY, PLLC, Louisville, Kentucky for Appellant. John R. Tarter, MAPOTHER & MAPOTHER, P.S.C., Louisville, Kentucky, for Appellee.

─────────────────

**OPINION**

─────────────────

STRANCH, Circuit Judge. The Fair Debt Collection Practices Act (FDCPA) was enacted to prevent a wide array of unfair, harassing, deceptive, and unscrupulous collection

1

practices by debt collectors.  First Resolution Investment Corp. filed a notice of judgment lien against Roslyn Currier's home and maintained it for approximately one month although the judgment it was based on never became final and was vacated.  We hold that filing and failing to release an invalid judgment lien against a debtor's home while the related state court collection action remains pending falls within the broad scope of practices prohibited by the FDCPA.  Because Currier stated a plausible claim under the FDCPA, we REVERSE the dismissal of her claims and REMAND for further proceedings.

## I.        FACTS AND PROCEEDINGS

We begin by accepting as true the facts alleged in the Complaint.  In May 2012, First Resolution, a debt collector, brought an action in Kentucky state court against Currier to collect a charged-off credit card debt of $1,000.51 plus 24% per annum interest for over six years, to be charged "until paid."  After Currier's pre-arranged local counsel failed to appear at a hearing on October 1, 2012, the Kentucky court issued a default judgment against Currier.  On October 5, Currier filed a motion to vacate the default judgment and for an enlargement of time to file her Answer, alleging that she had a complete statute of limitations defense.[1]  As of that date, the judgment against Currier was not final under Kentucky law.  *See Gullion v. Gullion*, 163 S.W.3d 888, 891 (Ky. 2005) (noting that a motion to vacate a judgment stays finality until the motion is ruled upon).

On October 8, First Resolution filed a judgment lien against Currier's home.  This lien was invalid because, under Kentucky law, a judgment lien can arise only from a final judgment.  *See* Ky. Rev. Stat. Ann. § 426.720(1); *Laferty v. Wickes Lumber Co.*, 708 S.W.2d 107, 108 (Ky. Ct. App. 1986) (noting that failure to strictly follow statutory requirements renders a lien invalid).  A Kentucky judge held a hearing on October 29 and ruled from the bench that it would grant Currier's motion to vacate the default judgment.  Although the lien had been invalid since October 5 and First Resolution knew the underlying judgment would be entirely vacated, First Resolution did not release the lien until November 5.

---

[1]The Complaint includes what appears to be a typo that says the motion to vacate the default judgment was filed on September 19, but the Defendant admits that the motion was filed on October 5, 2012.

Currier sued First Resolution in federal court, alleging that the invalid lien violated various provisions of the FDCPA, including the prohibitions against unfair debt collection practices, against collecting an unauthorized amount, and against threatening to take an action that cannot legally be taken. *See* 15 U.S.C. §§ 1692f, 1692f(1), 1692e(5). Finding that a violation of state law is not a per se violation of the FDCPA and that the invalid lien was not a threat, the district court dismissed the claims. Currier appeals.

## II.    STANDARD OF REVIEW

We review de novo a district court order dismissing a complaint pursuant to Rule 12(b)(6). *Bridge v. Ocwen Fed. Bank, FSB*, 681 F.3d 355, 358 (6th Cir. 2012). To survive a motion to dismiss, the plaintiff need only plead sufficient factual matter, which we must accept as true, to "state a claim to relief that is plausible on its face" meaning that we can draw the reasonable inference that the defendant is liable for the misconduct alleged. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted). Rule 8(a)(2) requires only a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Our analysis "rests primarily upon the allegations of the complaint, [but] matters of public record, orders, items appearing in the record of the case, and exhibits attached to the complaint also may be taken into account." *Henry v. Chesapeake Appalachia, L.L.C.*, 739 F.3d 909, 912 (6th Cir. 2014) (internal quotation marks omitted).

## III.    ANALYSIS

Congress passed the FDCPA to address the widespread and serious national problem of debt collection abuse by unscrupulous debt collectors. *See* S. Rep. No. 95-382, at 2 (1977); *see also* 15 U.S.C. § 1692(a), (e). The Act prohibits a wide array of specific conduct, but it also prohibits, in general terms, any harassing, unfair, or deceptive debt collection practice, which enables "the courts, where appropriate, to proscribe other improper conduct which is not specifically addressed." S. Rep. No. 95-382, at 4; *see generally* 15 U.S.C. §§ 1692d-1692f. As we have explained in the past, the Act is "extraordinarily broad." *Barany-Snyder v. Weiner*, 539 F.3d 327, 333 (6th Cir. 2008) (quoting *Frey v. Gangwish*, 970 F.2d 516, 1521 (6th Cir. 1992)). To determine whether conduct fits within the broad scope of the FDCPA, the conduct is viewed through the eyes of the "least sophisticated consumer." *Id*. This standard recognizes that

the FDCPA protects the gullible and the shrewd alike while simultaneously presuming a basic level of reasonableness and understanding on the part of the debtor, thus preventing liability for bizarre or idiosyncratic interpretations of debt collection notices. *Id*.

Currier alleges that filing and failing to release the invalid lien against her home violated multiple provisions of the FDCPA, "including, but not limited to": 15 U.S.C. § 1692f, which prohibits using "unfair or unconscionable means . . . to collect any debt"; § 1692f(1), which prohibits the "collection of any amount . . . unless such amount is expressly authorized by the agreement creating the debt or permitted by law"; and § 1692e(5), which prohibits "threat[ening] to take any action that cannot legally be taken or that is not intended to be taken."  First Resolution admits, and the district court properly found, that Currier has alleged that: she is a "consumer" within the meaning of the Act; the debt arose for personal, family, or household purposes; and First Resolution is a "debt collector."  *See* 15 U.S.C. §§ 1692(e), 1692a(3), 1692a(5)-(6).  We conclude that Currier sufficiently alleged conduct that falls within the broad scope of practices prohibited by the FDCPA and turn now to the specific provisions alleged.

1.      **Claims Under the FDCPA**

The FDCPA does not define an "unfair or unconscionable" practice under § 1692f, but, with the caveat that it is not limiting the general application of the term, it sets forth a non-exhaustive list of conduct that rises to that level. *See also Glazer v. Chase Home Fin. LLC*, 704 F.3d 453, 461-62 (6th Cir. 2013); *Limited, Inc. v. C.I.R.*, 286 F.3d 324, 332 (6th Cir. 2002) (under the rule of noscitur a sociis, the court should view the undefined term in light of its associates).  The listed conduct includes acceptance or solicitation of a postdated check absent certain circumstances, charging any person for communications by concealing the true purpose of the communication, taking or threatening to take an action to dispossess or disable property when there is no present right in the property, communicating with a consumer about a debt via postcard, or sending mail with any symbol other than the debt collector's address and non-identifying business name.  15 U.S.C. § 1692f.  The term also includes the collection of any amount not expressly authorized by the debt agreement or by law.  15 U.S.C. § 1692f(1).  Other actions that courts have determined to be potentially "unfair" under § 1692f include attaching law-firm generated documents resembling credit card statements to a state collection complaint,

*Hartman v. Great Seneca Fin. Corp.*, 569 F.3d 606, 610, 614 (6th Cir. 2009), sending a collection letter that questioned the debtor's honesty and good intentions, *McMillan v. Collection Prof'l, Inc.*, 455 F.3d 754, 765 (7th Cir. 2006), filing for a writ of garnishment against a debtor who was current in payments, *Fox v. Citicorp Credit Servs., Inc.*, 15 F.3d 1507, 1517 (9th Cir. 1994), and collecting 33% of a debt balance as a collection fee, *Bradley v. Franklin Collection Servs.*, 739 F.3d 606, 610 (11th Cir. 2014).

Unfair practices and deceptive practices are prohibited under separate sections of the Act. *See* 15 U.S.C. §§ 1692e (barring "false, deceptive, or misleading representations or means"), 1692f (barring "unfair or unconscionable means"); S. Rep. No. 95-382, at 4 ("[T]his bill prohibits in general terms any harassing, unfair, or deceptive collection practice."). Therefore, a collection practice could be unfair without necessarily being deceptive. *See Fed. Exp. Corp v. U.S. Postal Serv.*, 151 F.3d 536, 542 (6th Cir. 1998) ("A statute should be construed to accord meaning and effect to each of its provisions.")

Drawing all reasonable inferences from the facts alleged, First Resolution filed an invalid judgment lien on October 8, when it should have known that Currier had filed a meritorious motion to vacate the default judgment on October 5, three days earlier. Though First Resolution admittedly knew of Currier's motion to vacate later on October 8, it did nothing to release the lien or correct the error. First Resolution admitted at oral argument that good and proper practice would be to correct such errors, but offered no explanation for its failure to do so. Several weeks later, when the state judge ruled from the bench that the judgment would be vacated, First Resolution *still* failed to release it. It had no arguable basis for holding a judgment lien at that point in time. First Resolution did not voluntarily release the invalid lien until seven days later.

This conduct was not a mere technical violation of Kentucky law. The judgment lien placed an improper legal burden on Currier's home, restricting her rights in her own property until First Resolution decided to release the lien or until Currier undertook the burden of filing an action to quiet title. *See, e.g.*, *Tucker v. Grace Enters. of Ky., LLC*, No. 2003-CA-002341-MR, 2004 WL 2566518, at *1-2 (Ky. Ct. App. Nov. 12, 2004) (illustrating the use of a quiet title action to remove an improper judgment lien; noting that the lien prevented the conveyance of a marketable title in the property). The filing of and refusal to release an invalid lien is taken

seriously in Kentucky; it can, in some circumstances, be a criminal offense or grounds for suspension of an attorney. Ky. Rev. Stat. Ann. § 434.155 (intentionally filing a groundless lien is a Class D felony); *Ky. Bar Ass'n v. Glidewell*, 348 S.W.3d 759, 761-63 (Ky. 2011) (suspending attorney for repeatedly filing improper liens during divorce proceedings). Encumbering a debtor's home while the debtor pursues her legal rights to challenge the debt is not fair or equitable. The very point of a lien is that it coerces the property holder to settle a debt in order to maintain rights in the property. *See* "Lien," Black's law Dictionary (9th ed. 2009) (A lien is "[a] legal right of interest that a creditor has in another's property, lasting usu[ally] until a debt or duty that it secures is satisfied."). The least sophisticated consumer, indeed most consumers, would regard filing a lien on the debtor's home using a state procedure that does not authorize such action as an "unfair or unconscionable means to collect or attempt to collect" the debt. 15 U.S.C. § 1692f.

Maintaining an invalid lien against a debtor's home falls comfortably within the kinds of practices Congress has identified as unfair under § 1692f of the FDCPA. As First Resolution admitted at oral argument, the judgment lien exposed Currier to publicity and damaged her credit. This practice would cause at least as much improper public exposure as communicating with a consumer via post card or sending mail with a symbol other than the debt collector's address. *See* 15 U.S.C. § 1692f(7)-(8). Filing an invalid lien is also comparable to taking or threatening to take a nonjudicial action to effect the dispossession of property in which the debt collector has no enforceable security interest. *See* 15 U.S.C. § 1692f(6). Though invalid, the judgment lien appears valid on its face, thus representing to the least sophisticated consumer and the public that the creditor had a final judgment, had a right to execute on that judgment, and had a valid interest in the debtor's home. *See Hartman*, 569 F.3d at 613-14 (holding that where a jury could find that the least sophisticated consumer would be misled by a debt collection document, summary judgment for the defendant was improper under §§ 1692e and 1692f).

Currier has plausibly alleged an unfair debt collection practice under the broad meaning of § 1692f. Accordingly, it is unnecessary to go into the details of whether the practice is also unfair because it is an attempt to collect an amount not authorized by the credit card agreement or by law under § 1692f(1).

The alleged conduct of filing and maintaining an invalid lien for a month can also fairly be characterized as a threat to take an action that cannot legally be taken within the meaning of § 1692e(5). Court filings can be a threat under the FDCPA. *Gionis v. Javitch, Block, Rathbone, LLP*, 238 F. App'x 24, 28-29, 30 (6th Cir. 2007); *see also Sayyed v. Wolpoff & Abramson*, 485 F.3d 226, 229-32 (4th Cir. 2007) (holding that the FDCPA applies to interrogatories and motions for summary judgment); *Gearing v. Check Brokerage Corp.*, 233 F.3d 469, 472-73 (7th Cir. 2000) (holding that the FDCPA applies to a complaint). The fact that the threat appears in a lawsuit or other court filing does not diminish the threatening nature of the communication for purposes of the FDCPA. *See Gionis*, 238 F. App'x at 29-30. Nor does it matter that the filing is also an "action" because "'attempts' and 'threats' are not necessarily mutually exclusive concepts." *Id*. at 28-29. In light of the Act's overarching purpose to prevent false, deceptive, or misleading representations, whether a filing's "metaphysical description is more an 'attempt' [to collect a debt] or more a 'threat' is essentially wordplay. No semantical recasting alters the intimidating effect on the least sophisticated consumer: that she would be confused, and reasonably might feel pressured to immediately pay the debt, even if she disputed its validity" in order to avoid the implied consequences of the lien. *Id*. at 29 (internal quotation marks omitted). "This is so because even if the least sophisticated consumer," or indeed *any* consumer, "would view [the lien] as an actual 'attempt' to collect [the debt], the attempts would nonetheless embody an ongoing threat" that First Resolution would force the sale of her home or refuse to voluntarily release the lien. *Id*.; *see also* Ky. Rev. Stat. Ann. §§ 426.010, 426.290 (giving debt collector who holds a judgment lien a right to force the sale of underlying property). Currier plausibly alleged a claim under § 1692e(5).

It must be remembered that the Act prohibits "in general terms" harassing, unfair, or deceptive collection practices. S. Rep. No. 95-382, at 4. While "misleading" practices under § 1692e and "unfair" practices under § 1692f reference separate categories of prohibited conduct, they are broad, potentially overlapping, and are not mutually exclusive. A debt collector's action could be "misleading" under § 1692e, "unfair" under § 1692f, or, as alleged here, both. The distinct characteristics of § 1692e and § 1692f can also inform one another. The example of a "misleading" practice in § 1692e(5)—a threat to take an illegal action—supports Currier's theory that actually taking the illegal action is also an "unfair" practice under § 1692f. It is unlikely that

Congress prohibited a threat to do something illegal but did not prohibit the additional step of taking that illegal action. Ultimately, the legislative decision to prohibit broad categories of behavior—defined by examples—suggests that the Act should be read as a whole and in light of its purpose.

We do not reach the arguments Currier makes for the first time on appeal that the invalid lien was also a violation of § 1692e(2)(A), which prohibits false representation of the legal status of a debt; § 1692e(4), which prohibits representing that nonpayment of a debt could result in the sale of property when sale is not authorized by law; and § 1692e(10), which prohibits using deceptive means to attempt to collect a debt. These are matters to be addressed in the first instance by the district court.

### 2.      Defenses Raised to the FDCPA Claims

First Resolution raises a defense to the FDCPA claims—that the invalid lien was not a violation of the FDCPA because a violation of state law is not a per se violation of the FDCPA. Our sister circuits have indeed concluded—usually in the context of licensing violations—that not every technical violation of state debt collection law rises to the level of unfair or otherwise prohibited conduct under the FDCPA. *See, e.g.*, *LeBlanc v. Unifund CCR Partners*, 601 F.3d 1185, 1192 (11th Cir. 2010) (holding that debt collector's failure to have a proper license, a violation of state law, is not a per se violation of the FDCPA but that it may *support* a violation of the FDCPA); *Carlson v. First Revenue Assurance*, 359 F.3d 1015, 1018 (8th Cir. 2004) (holding that a debt collector's failure to have the proper license was not the kind of "false or misleading" practice barred by § 1692e); *Wade v. Reg'l Credit Ass'n*, 87 F.3d 1098, 1100-01 (9th Cir. 1996) (holding that sending a debtor correct notice of debt and risks to her credit was not a violation of the FDCPA even though debt collector was not licensed in debtor's state). A sister circuit has also rejected the contention that using the proper state procedure to freeze a debtor's bank account after receiving a valid final judgment was unfair under § 1692f where the debt collector unknowingly froze an account that contained exempt funds. *Beler v. Blatt, Hasenmiller, Leibsker, & Morre, LLC*, 480 F.3d 470, 472, 473-74 (7th Cir. 2007). There, the court said that the FDCPA is not an enforcement mechanism for state laws and it declined to create a hearing requirement in the state system. *Id*. at 473-74.

We agree that Congress did not turn every violation of state law into a violation of the FDCPA. But that does not mean that a violation of state law can never *also* be a violation of the FDCPA. The proper question in the context of an FDCPA claim is whether the plaintiff alleged an action that falls within the broad range of conduct prohibited by the Act. The legality of the action taken under state law may be relevant, as it is in this case. *See LeBlanc*, 601 F.3d at 1192 (considering the state law violation relevant to the FDCPA analysis). If the judgment lien had been valid under state law for the month that First Resolution held it, we could not say that it was an unfair debt collection practice even though it was coercive in nature. But the same action becomes unfair when accomplished by using a state mechanism that does not authorize it.

First Resolution also argues that it cannot be held liable under the FDCPA because it did not have reason to know that the lien was invalid at the time it mailed the notice of judgment lien. According to this version of events, the normal rule that a successful plaintiff in Kentucky court must wait 10 days to execute on a judgment did not apply here because the default judgment stated that "[t]his is a final judgment" and "execution may issue forthwith." *See* Ky. Rev. Stat. Ann. § 426.030 (setting a waiting period "unless ordered by the court"). Although the motion to vacate unquestionably rendered the judgment non-final, First Resolution contends that it did not know about the motion until the end of the day on October 8, 2012, after it had already mailed the notice of judgment lien. *See Pers. Bd. v. Heck*, 725 S.W.2d 13, 18 (Ky. Ct. App. 1986) ("A motion [to vacate a judgment] converts a final judgment to an interlocutory judgment.").

This argument fails for two reasons. First, whether or not First Resolution had reason to believe that the lien was valid when filed is an issue of fact that is not relevant at the motion to dismiss stage. Second, even if First Resolution's version of the facts were construed to be part of a bona fide error defense, we note that it would not establish all the elements of such defense. *See* 15 U.S.C. § 1692k(c); *Hartman*, 569 F.3d at 614. To qualify for this defense, a debt collector must prove by a preponderance of the evidence that the violation was unintentional, that it was the result of a bona fide error, and that the debt collector maintained procedures to avoid the error. *Hartman*, 569 F.3d at 614. Although First Resolution alleges that the invalid lien *began* as an unintentional bona fide error, it admits that it learned of Currier's motion to

vacate the judgment on the same day it filed the judgment lien and nonetheless failed to release the lien for a month. And it has alleged nothing to show that it maintains a procedure to avoid the error. In Kentucky, a losing party has only 10 days after entry of the final judgment to file a motion to vacate the judgment. Ky. R. Civ. P. 59.05. The error at issue could have been avoided if First Resolution had established a practice of waiting to file a judgment lien until 10 days after obtaining a judgment or of checking the docket before filing a lien. It could also have maintained a procedure for immediate correction of error. But First Resolution admits that it had implemented none of these procedures. First Resolution is not entitled to the bona fide error defense.

## IV.     CONCLUSION

For the reasons explained above, we **REVERSE** the district court's dismissal of Currier's complaint and **REMAND** the case for further proceedings consistent with this opinion.