16-2165-cv
Arias v. Gutman, Mintz, Baker & Sonnenfeldt LLP, et al.

**UNITED STATES COURT OF APPEALS**
**FOR THE SECOND CIRCUIT**

August Term, 2016

(Argued: April 27, 2017          Decided: November 14, 2017)

Docket No. 16-2165-cv

_____

FRANKLIN ARIAS,

*Plaintiff–Appellant,*

v.

GUTMAN, MINTZ, BAKER & SONNENFELDT LLP,
1700 DEVELOPMENT CO., (1500), INC.,

*Defendants–Appellees.*

_____

Before:

CABRANES and LOHIER, *Circuit Judges*, and FORREST, *District Judge.**

Plaintiff-appellant Franklin Arias brings this action alleging that defendant-appellee Gutman, Mintz, Baker & Sonnenfeldt LLP ("GMBS") violated sections 1692e and 1692f of the Fair Debt Collection Practices Act

---

* Judge Katherine B. Forrest, of the United States District Court for the Southern District of New York, sitting by designation.

("FDCPA") by filing a false, deceptive, and misleading affirmation in New York State court and by maintaining a restraint on Arias's bank account in bad faith. The United States District Court for the Southern District of New York (Daniels, J.) dismissed Arias's suit, concluding that GMBS was entitled to judgment on the pleadings. Because we conclude that Arias's complaint states a claim under sections 1692e and 1692f of the FDCPA, we **VACATE** and **REMAND** for further proceedings consistent with this opinion.

CLAUDIA WILNER (Marc Cohan, National Center for Law and Economic Justice, New York, NY, Susan Shin, New Economy Project, New York, NY, Ahmad Keshavarz, Brooklyn, NY, *on the brief*), National Center for Law and Economic Justice, New York, NY, *for Plaintiff-Appellant*.

KENNETH A. NOVIKOFF, Rivkin Radler LLP, Uniondale, NY, *for Defendants-Appellees*.

LOHIER, *Circuit Judge*:

Franklin Arias claims that Gutman, Mintz, Baker & Sonnenfeldt LLP ("GMBS"), a law firm, violated the Fair Debt Collection Practices Act ("FDCPA") and New York State law when it garnished his bank account and then tried to block him from showing that all of the funds in his account were

exempt from garnishment.[1]  The United States District Court for the Southern District of New York (Daniels, J.) dismissed Arias's FDCPA claim and declined to exercise supplemental jurisdiction over Arias's State law claims. As explained below, we **VACATE** the judgment of the District Court and **REMAND** for further proceedings consistent with this opinion.

**BACKGROUND**

As this case involves the alleged garnishment of Social Security retirement income ("SSRI") in a New York-based bank account and the interplay between the FDCPA and New York law relating to freezing and garnishing consumer bank accounts, we first provide an overview of the relevant State legal framework.

1.  New York Exempt Income Protection Act

Under federal law, SSRI is exempt from garnishment, with certain exceptions not relevant to this appeal.  See 42 U.S.C. § 407(a).  In 2008 New York enacted the Exempt Income Protection Act ("EIPA") to better protect "exempt funds from forcible collection—a problem that had reached epidemic

---

[1] Arias also asserted a New York State law claim against GMBS's client, 1700 Development Co., (1500), Inc. ("1700 Inc.").  This appeal concerns only the FDCPA claim against GMBS.

proportions in New York State." Cruz v. TD Bank, N.A., 711 F.3d 261, 270 (2d Cir. 2013) (quotation marks omitted). The EIPA "remedied an imbalance in the prior law which unfairly placed the burden on debtors to show that their funds were exempt, at a time when they were being deprived access to those funds." Distressed Holdings, LLC v. Ehrler, 976 N.Y.S.2d 517, 521 (2d Dep't 2013).

To begin the garnishment process, a creditor can serve a restraining notice on the debtor's bank, along with a copy of the notice to be sent to the debtor, an exemption notice, and two exemption claim forms. N.Y. C.P.L.R. §§ 5222(a), 5222-a(b)(1). "[T]he restraining notice serves as an injunction prohibiting the transfer of the judgment debtor's property." Ehrler, 976 N.Y.S.2d at 521; see also N.Y. C.P.L.R. § 5222(b). But the debtor's bank is required to leave certain funds unrestrained. The bank must leave unrestrained a minimum amount for the debtor's basic needs, calculated based on the federal and New York minimum wage laws. See N.Y. C.P.L.R. § 5222(i). And if within the 45 days preceding the restraining notice an account received a direct deposit of funds "reasonably identifiable as statutorily exempt," the bank must leave $2,500 unrestrained. Id. § 5222(h).

4

Within two business days of receiving a restraining notice, the bank must serve the debtor with the restraint documents, including the exemption notice. Id. § 5222-a(b)(3). "The exemption notice advises the judgment debtor that his or her bank account is being restrained or frozen" and that "certain funds, which may be on deposit in the restrained bank account, are exempt from restraint and cannot be taken by the judgment creditor to satisfy the judgment." Ehrler, 976 N.Y.S.2d at 522.

If the debtor believes that any of the restrained funds are exempt from garnishment, he may complete an exemption claim form—signed under penalty of perjury—and send it to the bank and the creditor's attorney. N.Y. C.P.L.R. § 5222-a(c)(1). The debtor may also send information establishing that the restrained funds are exempt, including, inter alia, "originals or copies of benefit award letters, checks, check stubs or any other document that discloses the source of the judgment debtor's income, and bank records showing the last two months of account activity." Id. § 5222-a(c)(4). Upon receiving an exemption claim form, the creditor generally must instruct the bank to release the restrained funds if the exemption claim form "is accompanied by information demonstrating that all funds in the account are

exempt." Id. If the supporting documentation shows that "the account contains some funds from exempt sources, and other funds from unknown sources, the judgment creditor shall apply the lowest intermediate balance principle of accounting"[2] and instruct the bank to release the exempt portion of the account. Id.

Regardless of the documents accompanying the debtor's exemption claim form, the bank must release the restrained funds eight days after receiving an exemption claim form, unless the creditor files an objection in court within that time. Id. § 5222-a(c)(3). The creditor may do so by making a motion under section 5240 of the New York Civil Practice Law and Rules and serving copies of its moving papers on the bank and the debtor. Id. § 5222-a(d). The creditor's motion must be accompanied by an affirmation demonstrating "a reasonable belief that [the] judgment debtor's account contains funds that are not exempt from execution." Id. "The affirmation . . . shall not be conclusory, but is required to show the factual basis upon which

---

[2] Under the lowest intermediate balance principle, exempt funds are the last funds to leave the account. For example, if $1,000 of exempt funds and $1,000 of non-exempt funds are deposited, and then $1,000 is withdrawn, the remaining $1,000 is exempt. See United States v. Banco Cafetero Panama, 797 F.2d 1154, 1159 (2d Cir. 1986); see also Hill v. Kinzler (In re Foster), 275 F.3d 924, 927 n.1 (10th Cir. 2001).

the reasonable belief is based." Id. If the creditor objects to an exemption claim in bad faith, it will be liable for the debtor's costs, reasonable attorneys' fees, actual damages, and an amount not to exceed $1,000. Id. § 5222-a(g). The court will hold a hearing to determine whether the funds are exempt, and shall issue its decision within five days of the hearing. Id. § 5222-a(d).

2. Factual Background[3]

In 2006 Arias rented an apartment in the Bronx owned by 1700 Inc. At some point that year, Arias moved out of the apartment and allowed his daughter to move in, expecting that she would pay the rent to 1700 Inc. After his daughter missed two months of rent payments, 1700 Inc. retained GMBS and sued Arias for breach of the lease in Bronx County Civil Court (the "State court"). When Arias failed to file an answer, 1700 Inc. obtained a default judgment.

Around December 2014, 1700 Inc., through GMBS, tried to collect on its default judgment by issuing a restraining notice on Bank of America, where Arias had a checking account. In response to the restraining notice, Bank of

---

[3] The following facts are drawn from the allegations in the complaint, see Mantena v. Johnson, 809 F.3d 721, 727–28 (2d Cir. 2015), and from documents attached to the complaint, see Nicosia v. Amazon.com, Inc., 834 F.3d 220, 230–31 (2d Cir. 2016).

America notified Arias that upon "receiv[ing] an order to remove funds" from his account, it had "researched [his] account[]" and identified $2,625 that constituted protected Social Security "benefits payments," leaving $1,294.62 subject to restraint and removal from his account under the order.

That same month, Arias tried to persuade GMBS that "[a]ll of the money" in his account was SSRI, which is exempt from restraint and garnishment under federal law, 42 U.S.C. § 407(a). At Arias's request, Bank of America sent GMBS Arias's bank statements for the period February through December 2014, showing only deposits of SSRI. Arias also personally informed GMBS that all of the funds in his account were exempt from restraint or garnishment. GMBS replied that it would release Arias's funds only if he made a payment. When Arias said he could not afford to do so, GMBS answered that his only recourse would be to go to court to have the restraint removed.

Arias persisted. He mailed GMBS a completed exemption claim form indicating that all of the funds in his checking account were SSRI, and he re-sent the bank statements from February through December 2014 that Bank of America had previously sent. GMBS nevertheless filed an objection to Arias's

claim of exemption, asking the State court to find that the funds in Arias's account were not exempt from garnishment and, in the alternative, for a hearing and a protective order to prevent the release of the funds. In support of the motion, a GMBS attorney filed an affirmation representing that "[t]he commingling of personal funds with exempt funds transforms the opening balance into personal and non-exempt monies," and that Arias had "not provide[d] the proper documentation in support of his Exemption Claim Form" because he "failed to provide any bank records starting from a zero balance." App'x 43–44. In his complaint, Arias alleges that these representations were false and misleading and that GMBS had no good faith basis to object to his exemption claim because it knew, based on the bank statements he provided, that all of the funds in his account were exempt from garnishment.

In January 2015 the State court held a hearing on GMBS's objection. Arias, appearing pro se, claimed that all of the funds in his account were SSRI. During the hearing a GMBS attorney reviewed the bank statements that Arias had with him—the same documents Arias had twice transmitted to

9

GMBS. After reviewing the statements, the GMBS attorney promptly withdrew the objection and agreed to release the funds in Arias's account.

### 3. Procedural Background

In this action, Arias, now counseled, claims that GMBS violated the FDCPA as well as New York's General Business Law and Judiciary Law, and also brings a common law claim for conversion. The District Court considered and granted GMBS's motion for judgment on the pleadings, see Fed. R. Civ. P. 12(c), holding that (1) GMBS had not misrepresented Arias's burden of proof because a debtor must "provide documentary proof to sufficiently demonstrate the exempt status of restrained funds," Arias v. Gutman, Mintz, Baker & Sonnenfeldt, P.C., No. 15-CV-09388 (GBD), 2016 WL 3443600, at *6 (S.D.N.Y. June 8, 2016); (2) GMBS's alleged misrepresentation about Arias's failure to produce documents showing a zero balance was not material because it was unrelated to the nature of his underlying debt and because Arias maintained that he never commingled funds in his account; (3) even if the misrepresentation were material, it would not impede the least sophisticated consumer's ability to respond to the dispute because GMBS's objection encouraged Arias to participate in the hearing before the State court;

10

and (4) GMBS did not employ unfair or unconscionable means to collect the debt because, among other things, GMBS complied with applicable New York procedural law.  Having dismissed Arias's FDCPA claim, the District Court declined to exercise supplemental jurisdiction over Arias's State law claims.

This appeal followed.

**DISCUSSION**

We review the grant of a motion for judgment on the pleadings <u>de novo</u>, accepting the factual allegations in the complaint as true and drawing all reasonable inferences in favor of Arias.  <u>See</u> <u>Mantena v. Johnson</u>, 809 F.3d 721, 727–28 (2d Cir. 2015).

1.  <u>The Fair Debt Collection Practices Act</u>

The FDCPA is a strict liability statute:  The plaintiff "does not need to show intentional conduct on the part of the debt collector."  <u>Ellis v. Solomon & Solomon, P.C.</u>, 591 F.3d 130, 135 (2d Cir. 2010).  Congress enacted the FDCPA to "eliminate abusive debt collection practices by debt collectors, to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses."

11

15 U.S.C. § 1692(e). The Senate report accompanying the legislation noted that debt collection abuse, including the "misrepresentation of a consumer's legal rights," by third-party debt collectors "is a widespread and serious national problem." S. Rep. No. 95-382, at 2 (1977), reprinted in 1977 U.S.C.C.A.N. 1695, 1696 [hereinafter Senate Report]. "Because the FDCPA is remedial in nature, its terms must be construed in liberal fashion if the underlying Congressional purpose is to be effectuated." Vincent v. Money Store, 736 F.3d 88, 98 (2d Cir. 2013) (quotation marks omitted).

This appeal concerns two overlapping sections of the FDCPA: section 1692e, which prohibits false, deceptive, or misleading representations, and section 1692f, which prohibits collecting or attempting to collect a debt through unfair or unconscionable means. Both sections expressly prohibit specific conduct relating to debt collection, but the FDCPA "enable[s] the courts, where appropriate, to proscribe other improper conduct which is not specifically addressed." Senate Report at 4; see also Avila v. Riexinger & Assocs., LLC, 817 F.3d 72, 75 (2d Cir. 2016) (describing the FDCPA's prohibitions as "non-exhaustive").

Section 1692e prohibits debt collectors from using "any false, deceptive, or misleading representation or means in connection with the collection of any debt," including, as relevant here, misrepresenting the "character, amount, or legal status" of a debt; threatening to "take any action that cannot legally be taken"; or threatening a debtor with arrest, imprisonment, or seizure of property if the debtor fails to make a payment. 15 U.S.C. § 1692e. A representation is "deceptive" under section 1692e if it is "open to more than one reasonable interpretation, at least one of which is inaccurate." Easterling v. Collecto, Inc., 692 F.3d 229, 233 (2d Cir. 2012).

We analyze the reasonableness of an interpretation from the perspective of the "least sophisticated consumer," id. at 234, who, we have explained, lacks the sophistication of the average consumer and may be naive about the law, but is rational and possesses a rudimentary amount of information about the world, Ellis, 591 F.3d at 135. The standard is objective, "pays no attention to the circumstances of the particular debtor in question," and asks only "whether the hypothetical least sophisticated consumer could reasonably interpret" the representation in a way that is inaccurate. Easterling, 692 F.3d at 234 (emphasis added). Employing the least

13

sophisticated consumer standard "ensures the protection of all consumers, even the naive and the trusting, against deceptive debt collection practices." Clomon v. Jackson, 988 F.2d 1314, 1320 (2d Cir. 1993).

Section 1692f prohibits debt collectors from using any "unfair or unconscionable means to collect or attempt to collect any debt." 15 U.S.C. § 1692f. Like its counterpart, section 1692e, section 1692f contains a non-exhaustive list of unfair practices, including the collection of an invalid debt and taking or threatening to take non-judicial action to effect the dispossession of property without a legal right to do so. Id. The FDCPA may also bar an array of other unfair practices. See Currier v. First Resolution Inv. Corp., 762 F.3d 529, 534 (6th Cir. 2014) (collecting cases).

Although the FDCPA leaves the term "unfair or unconscionable means" undefined, we have held that the term refers to practices that are "shockingly unjust or unfair, or affronting the sense of justice, decency, or reasonableness." Gallego v. Northland Grp. Inc., 814 F.3d 123, 128 (2d Cir. 2016) (quotation marks omitted) (quoting Black's Law Dictionary (10th ed. 2014)). The least sophisticated consumer standard is used to determine whether a practice is unfair or unconscionable. See LeBlanc v. Unifund CCR

14

Partners, 601 F.3d 1185, 1200–01 (11th Cir. 2010); cf. Schweizer v. Trans Union Corp., 136 F.3d 233, 237 (2d Cir. 1998).

2. Interplay of Sections 1692e and 1692f

GMBS argues that sections 1692e and 1692f are mutually exclusive and that the same conduct by a debt collector cannot violate both sections at once. We disagree. See Sykes v. Mel S. Harris & Assocs. LLC, 780 F.3d 70, 82, 87 (2d Cir. 2015) (affirming certification of a class alleging that the same scheme violated sections 1692e and 1692f). Each section primarily targets a different type of misconduct, even as both sections share the goal of protecting consumers from abuse by debt collectors. Section 1692e mainly targets practices that take advantage of a debtor's naivete or lack of legal acumen. Section 1692f, meanwhile, is aimed at practices that give the debt collector an unfair advantage over the debtor or are inherently abusive. "[A] collection practice could be unfair without necessarily being deceptive," Currier, 762 F.3d at 534, could be deceptive without being unfair, or could be both deceptive and unfair, see id. at 536 (sections 1692e and 1692f are "broad, potentially overlapping, and are not mutually exclusive"); LeBlanc, 601 F.3d at 1193, 1202 (allowing claims under sections 1692e and 1692f to proceed

15

based on the same conduct); McMillan v. Collection Prof'ls Inc., 455 F.3d 754, 760 (7th Cir. 2006) (same); Duffy v. Landberg, 215 F.3d 871, 874–75 (8th Cir. 2000) (same). Consider, for example, section 1692f(7), which deals specifically with communicating with a consumer about a debt by postcard. A debt collector who communicates with a debtor by postcard containing a representation that is "false, deceptive, or misleading" to the least sophisticated consumer can violate both section 1692f(7) and section 1692e. In any event, here GMBS is alleged to have violated each section based on different conduct: section 1692e based on the false statements made in GMBS's affirmation, and section 1692f based on GMBS's objection to Arias's exemption claim when it allegedly knew there was no legally sufficient basis to do so.

3. Arias's Claim Under Section 1692e

Even if the same conduct can constitute a violation of both sections, GMBS argues that Arias's complaint fails to state a claim under section 1692e. Recall that GMBS's affirmation is alleged to have contained two false representations, as follows:

[Arias] does not provide the proper documentation in support of his Exemption Claim Form. [Arias] failed to provide any bank

16

records starting from a zero balance for [GMBS] to review to determine if [Arias's] account contains solely social security. Without any of those documents, it is not possible for [GMBS] to determine what funds, if any, contained in the Bank of America account are exempt as social security[;]

and

[e]ven if the restrained account contains social security, [Arias] failed to provide any documentation that he never commingled the account with non-exempt funds.

App'x 44.

In our view, neither representation is accurate. Contrary to both representations, New York's EIPA did not require Arias to disprove commingling or to provide bank statements starting from a zero balance in order for GMBS to figure that all of Arias's funds were exempt under the lowest intermediate balance rule. See N.Y. C.P.L.R. § 5222-a(d) ("The burden of proof shall be upon the judgment creditor to establish the amount of funds that are not exempt."); id. § 5222-a(c)(4) ("[T]he judgment creditor shall apply the lowest intermediate balance principle of accounting."). Here the bank statements show only deposits of SSRI and an ending balance lower than the sum of the exempt deposits. The entire balance was thus clearly exempt. For this reason we conclude that Arias plausibly alleged that the two GMBS

17

representations at issue had the "capacity to discourage debtors from fully availing themselves of their legal rights," Easterling, 692 F.3d at 235, by falsely suggesting that (1) the commingling of exempt and non-exempt funds renders the balance non-exempt, and (2) the consumer must disprove commingling by producing bank statements starting from a zero balance.

In urging a contrary conclusion, GMBS makes three arguments.

First, GMBS argues that its misrepresentations are not actionable because Arias was not actually misled. It points to Arias's appearance at the State court hearing and his ultimate success there. It also points out that Arias knew he had never commingled funds in his account. In Easterling, we rejected the debt collector's argument that the plaintiff was never actually misled, holding that "the operative inquiry . . . is whether the hypothetical least sophisticated consumer" would be misled by the debt collector's misrepresentation. Id. at 234. For the same reason, we reject GMBS's argument because it ignores the objective nature of the least sophisticated consumer standard and asks us instead to focus on Arias's particular circumstances.

Describing its affirmation as "legal advocacy made by counsel," GMBS next argues that we should "hesita[te] to impose FDCPA liability" based on litigation conduct. Appellee Br. 22–23. It is true that in Simmons v. Roundup Funding, LLC, 622 F.3d 93 (2d Cir. 2010), we held that filing a false statement of claim in bankruptcy court cannot give rise to a FDCPA claim, and more recently in Midland Funding, LLC v. Johnson, 137 S. Ct. 1407, 1411 (2017), the Supreme Court held that "filing of a proof of claim [in bankruptcy court] that on its face indicates that the limitations period has run does not" violate any provision of the FDCPA, including section 1692e. But the rationale of Midland and Simmons reflects the special protections afforded a consumer under the Bankruptcy Code—protections that are unavailable where, as here, the proceedings are in State court and the consumer, often unfamiliar with the law governing garnishment of bank accounts, has the benefit of neither counsel nor a bankruptcy trustee. See Midland, 137 S. Ct. at 1413 ("[I]n the context of a Chapter 13 bankruptcy[,] . . . [t]he consumer initiates [the] proceeding, . . . [a] knowledgeable trustee is available[,] . . . [and p]rocedural bankruptcy rules more directly guide the evaluation of claims."); Simmons, 622 F.3d at 96. Under these circumstances, where court filings "routinely

19

come to the consumer's attention and may affect his or her defense of a collection claim," Hemmingsen v. Messerli & Kramer, P.A., 674 F.3d 814, 818 (8th Cir. 2012), debt collectors do not have immunity from FDCPA liability for their litigation conduct, see Eades v. Kennedy, PC Law Offices, 799 F.3d 161, 172 (2d Cir. 2015); cf. Heintz v. Jenkins, 514 U.S. 291, 294 (1995) (holding that the FDCPA "applies to the litigating activities of lawyers").

Third, GMBS argues that the relevant statements are not "material" because they are unrelated to the "nature" or "status" of Arias's debt. Appellee Br. 22 n.4. We are not persuaded. Even if we assume without deciding that a general "materiality" requirement exists under section 1692e,[4] we regard GMBS's alleged misrepresentations as material because they concerned the applicable burden of proof and the substantive law regarding commingling of funds under the EIPA, issues that can reasonably be expected to affect how or even whether a consumer responds to a debt collector's objection to a claim that the restrained funds are exempt from garnishment.

---

[4] Our sister circuits have recognized a materiality requirement. See, e.g., Donohue v. Quick Collect, Inc., 592 F.3d 1027, 1033–34 (9th Cir. 2010); Miller v. Javitch, Block & Rathbone, 561 F.3d 588, 596 (6th Cir. 2009); Hahn v. Triumph P'ships LLC, 557 F.3d 755, 757–58 (7th Cir. 2009).

### 4. Arias's Claim Under Section 1692f

Finally, we consider whether the complaint states a claim under section 1692f, focusing principally on the claim that GMBS used unfair or unconscionable means to collect on the default judgment entered against Arias as well as the following allegations: (1) that GMBS had "documentary proof that [all of the] funds restrained [in Arias's bank account] were exempt SSRI"; (2) that GMBS refused to release the restraint and filed an objection in State court despite having "no good-faith basis for objecting . . . in order to abuse and intimidate [Arias] into agreeing to send [GMBS] payments from his exempt funds, or in hopes that [Arias] would default at the hearing"; (3) that "it is the pattern and practice of GMBS to object to . . . exemption claims whether or not [it has] a good faith basis for doing so, in order to abuse and intimidate consumers"; and (4) that GMBS agreed to release Arias's funds at the State court hearing only after one of its lawyers reviewed documents that had previously been produced and sent with Arias's exemption claim form. Together these allegations are enough to support Arias's claim that GMBS's conduct was "shockingly unjust or unfair" in violation of section 1692f, insofar as it required Arias to prepare needlessly for a hearing that GMBS

21

knew was frivolous and that was intended primarily to harass Arias, frustrate his exemption claim, and erect procedural and substantive challenges that Arias, pro se, was ill-equipped to handle. Attending a hearing can be expensive, forcing consumers to take unpaid leave from work, incur additional dependent care expenses, and so on, without access to critical SSRI funds. We hold that a debt collector engages in unfair or unconscionable litigation conduct in violation of section 1692f when, as alleged here, it in bad faith unduly prolongs legal proceedings or requires a consumer to appear at an unnecessary hearing.[5] Cf. Eades, 799 F.3d at 172 (suggesting that the filing of a "frivolous or baseless" complaint could violate section 1692f(1)).

Our holding is consistent with section 1692e, which prohibits a debt collector from "threat[ening] to take any action that cannot legally be taken." 15 U.S.C. § 1692e(5). It is unlikely that Congress would prohibit threatening to take an illegal action while permitting the additional step of actually taking the illegal action. See Currier, 762 F.3d at 535–36 (holding that under section 1692e, alleged illegal conduct "can also fairly be characterized as a threat to

---

[5] Our holding does not alter the well-settled rule that the FDCPA is a strict liability statute. We hold only that a plaintiff may allege and later prove bad faith to show that an otherwise legal act is unfair or unconscionable for purposes of section 1692f.

22

take [that illegal action]").  Our holding also coheres with decisions of our sister circuits, which have held that unfair or unconscionable litigation conduct violates section 1692f.  See, e.g., Kaymark v. Bank of Am., N.A., 783 F.3d 168, 174 (3d Cir. 2015) (filing foreclosure complaint seeking attorney's fees not yet incurred); Currier, 762 F.3d at 535 (maintaining invalid lien on debtor's property); Phillips v. Asset Acceptance, LLC, 736 F.3d 1076, 1079 (7th Cir. 2013) (filing suit to collect debt for which the statute of limitations had run); McCollough v. Johnson, Rodenburg & Lauinger, LLC, 637 F.3d 939, 952 (9th Cir. 2011) (serving requests for admission on pro se debtor without informing debtor that statements would be automatically admitted if not responded to within thirty days); Fox v. Citicorp Credit Servs., Inc., 15 F.3d 1507, 1517 (9th Cir. 1994) (filing writ of garnishment against debtors who were current on payments).

In response, GMBS makes three principal arguments.  First, it argues that it technically complied with the EIPA, a State statute, and exercised its "explicit statutory right" to object to Arias's exemption claim and to seek a court hearing.  Appellee Br. 38.  We note, to the contrary, that GMBS's alleged conduct actually contravened the EIPA, which provides that a debt collector

23

"shall . . . release the [debtor's] account" when it receives documents showing that all of the funds in an account are exempt, and may file an objection only if it has a "factual basis" to form a "reasonable belief" that the account contains non-exempt funds. N.Y. C.P.L.R. § 5222-a(c)(4), (d) (emphasis added). Second, GMBS claims it had a good faith basis to object to Arias's claim of exemption, pointing, for example, to Bank of America's suggestion that some of Arias's funds were not exempt from garnishment and to the fact that Arias's bank statements were not notarized.[6] We are not persuaded. Without further investigation, there was no good faith basis for GMBS to rely on Bank of America's ambiguous statement that some of Arias's funds "may not" be exempt from garnishment. App'x 30. GMBS's reason to doubt the authenticity of Arias's bank statements was entirely conclusory and speculative. See N.Y. C.P.L.R. § 5222-a(d). Third, citing Bentley v. Great Lakes Collection Bureau, 6 F.3d 60 (2d Cir. 1993), GMBS asserts that its motive and intent in objecting to Arias's exemption claim are "irrelevant to the issue of liability" because the FDCPA is a strict liability statute. In Bentley, we held

---

[6] Because this appeal is from a dismissal at the pleading stage, we consider these arguments only to the extent they rely on documents attached to the complaint. See Nicosia, 834 F.3d at 230–31.

24

that inaccurate statements in a collection letter were actionable under the FDCPA regardless of the debt collector's culpability. Id. at 63. We did not hold that a debt collector's intent is irrelevant in determining whether its conduct is unfair or unconscionable under section 1692f. Here the restraint is adequately alleged to have been wrongfully imposed for an abusive purpose.

5. Remedies

Finally, turning to remedies, GMBS argues that Arias cannot recover under the FDCPA because the EIPA provides for sanctions when a judgment creditor files an objection in bad faith. See N.Y. C.P.L.R. § 5222-a(c)(4), (g). But abusive debt collection practices may violate both the FDCPA and State law. The FDCPA's express purpose includes "promot[ing] consistent State action to protect consumers against debt collection abuses." 15 U.S.C. § 1692(e). The legislative history confirms this purpose: Congress enacted the FDCPA in part to address "the inadequacy of existing State . . . laws." Senate Report at 1697; see also 15 U.S.C. § 1692(b) ("Existing laws and procedures for redressing [abuse by debt collectors] are inadequate to protect consumers."). We therefore reject the argument that the remedial scope of the FDCPA is

25

limited by State law.  See Romea v. Heiberger & Assocs., 163 F.3d 111, 118 (2d Cir. 1998).[7]

**CONCLUSION**

We have considered GMBS's remaining arguments and conclude that they are without merit.  For the foregoing reasons, we **VACATE** the judgment of the District Court and **REMAND** for further proceedings consistent with this opinion.

---

[7] We also note that the EIPA provides for sanctions against the "judgment creditor," N.Y. C.P.L.R. § 5222-a(c)(4), (g), here 1700 Inc., and therefore may not provide a complete remedy to Arias, a consumer asserting a claim against a law firm representing a judgment creditor.