19-758
Wagner v. Chiari & Ilecki, LLP

UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT

_____

August Term, 2019

(Argued: February 5, 2020          Decided: September 4, 2020)

Docket No. 19-758

_____

WILLIAM J. WAGNER,

*Plaintiff-Appellant,*

v.

CHIARI & ILECKI, LLP,

*Defendant-Appellee.*

_____

Before: POOLER, LYNCH, and PARK, *Circuit Judges*.

Appeal from the grant of summary judgment of the United States District Court for the Western District of New York (Frank P. Geraci, *C.J.*) to Defendant-Appellee Chiari & Ilecki, LLP ("C&I"). Plaintiff-Appellant William J. Wagner alleges that C&I violated various provisions of the Fair Debt Collection Practices

Act, 15 U.S.C. § 1692, *et seq.*, by sending him a debt collection notice, information subpoena, subpoena duces tecum, and restraining notices in connection with C&I's efforts to collect on a state court judgment for an unpaid debt, though Wagner was not the debtor. We conclude that the district court erred in granting summary judgment to C&I as to the bona fide error defense under Section 1692k(c), vacate the order and judgment, and remand for further proceedings. We otherwise affirm the judgment of the district court.

Affirmed in part, vacated in part, and remanded.

_____

BRIAN LEWIS BROMBERG, New York, NY, *for Plaintiff-Appellant William J. Wagner.*

KENNETH R. HILLER, Amherst, NY, *for Plaintiff-Appellant William J. Wagner.*

KATHERINE GRACE HOWARD, Connors LLP (Terrence M. Connors, *on the brief*), Buffalo, NY, *for Defendant-Appellee Chiari & Ilecki, LLP.*

POOLER, *Circuit Judge*:

Plaintiff-Appellant William J. Wagner alleges that Defendant-Appellee Chiari & Ilecki, LLP ("C&I") violated the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692, *et seq.*, by erroneously sending multiple debt collection communications to him, rather than to the actual debtor, William J. Wagner, Jr. ("Debtor"). The United States District Court for the Western District of New York (Frank P. Geraci, *C.J.*) granted C&I's motion for summary judgment. On appeal, Wagner argues that C&I committed violations of various provisions of the FDCPA that were not protected by the statutory exception from liability for bona fide errors, 15 U.S.C. § 1692k(c), by sending him a debt collection notice, information subpoena, subpoena duces tecum, and restraining notices in order to collect on a judgment against the Debtor. We affirm the district court's grant of summary judgment to C&I on Wagner's Section 1692e(5) and 1692f claims and vacate and remand in part on the bona fide error issue for further proceedings consistent with this opinion.

# BACKGROUND

Wagner challenges C&I's use of several devices available under New York law to enforce a monetary judgment of the New York courts. We provide an overview of the relevant features of the collection devices at issue before we summarize the factual background and procedural history of the case.

## I.  Enforcement of Judgments Under New York Law

Article 52 of the New York Civil Practice Law and Rules "governs the enforcement and collection of money judgments in New York State courts." *Cruz v. TD Bank, N.A.*, 711 F.3d 261, 264 (2d Cir. 2013). A "money judgment" is defined as "a judgment, or any part thereof, for a sum of money or directing the payment of a sum of money," N.Y. C.P.L.R. § 105(q), and "may be enforced against any debt, which is past due or which is yet to become due, certainly or upon demand of the judgment debtor." *Id.* § 5201(a). When a creditor successfully obtains a money judgment against a judgment debtor, New York law allows the creditor, through an attorney, to use several statutory devices with force of law to collect on the judgment.

First, "the attorney for the judgment creditor as officer of the court" can issue a "restraining notice," which bars a "judgment debtor" from making "any sale, assignment, transfer or interference with any property in which he or she has an interest . . . until the judgment or order is satisfied or vacated." N.Y. C.P.L.R. § 5222(b). While restraining notices can be served on a person other than a judgment debtor, such a restraining notice "is effective only if, at the time of service" (1) "he or she owes a debt to the judgment debtor," (2) the person "is in the possession or custody of property in which he or she knows or has reason to believe the judgment debtor or obligor has an interest," or (3) "the judgment creditor or support collection unit has stated in the notice that a specified debt is owed by the person served to the judgment debtor or obligor or that the judgment debtor or obligor has an interest in specified property in the possession or custody of the person served." *Id.*

Under New York Civil Practice Law and Rules Section 5223, "[a]t any time before a judgment is satisfied . . . the judgment creditor may compel disclosure of all matter relevant to the satisfaction of the judgment, by serving upon any

5

person a subpoena." Section 5224 authorizes several types of subpoenas to be served in connection with enforcement of money judgments, including (1) a "subpoena requiring attendance for the taking of a deposition," (2) a "subpoena duces tecum requiring the production of books and papers for examination at a time and place named therein," and (3) an "information subpoena," which requires that the recipient respond to a set of written questions. *Id.* § 5224(a). Each subpoena must, inter alia, specify the parties to, amount, and date of the judgment, and "state that false swearing or failure to comply with the subpoena is punishable as a contempt of court." *Id.* § 5223.

Information subpoenas have a "limited postjudgment discovery purpose," *N.Y. Cmty. Bank v. Bank of Am., N.A.*, 93 N.Y.S.3d 7, 10 (1st Dep't 2019), and can be served on "an individual or entity other than the judgment debtor . . . only if the judgment creditor or the judgment creditor's attorney has a reasonable belief that the party receiving the subpoena has in their possession information about the debtor that will assist the creditor in collecting his or her judgment." N.Y. C.P.L.R § 5224(a)(3)(i). The judgment creditor or his or her attorney must certify

6

that "to the best of that person's knowledge, information and belief, formed after an inquiry reasonable under the circumstances, that the individual or entity receiving the [information] subpoena has relevant information about the debtor." *Id.*

While New York law thus "permits [a] creditor a broad range of inquiry through either the judgment debtor or any third person with knowledge of the debtor's property," *Gryphon Domestic VI, LLC v. GBR Info. Servs., Inc.*, 815 N.Y.S.2d 65, 66 (1st Dep't 2006), the discovery pursued must be "relevant to the judgment debtor's income and property." Siegel, Practice Commentaries, McKinney's Consol. Laws of N.Y., Book 7B, CPLR C5223:2.

Further, "[r]efusal or willful neglect of any person to obey" an information subpoena, subpoena duces tecum, or restraining notice issued in connection with the enforcement of the judgment of a New York court is "punishable as a contempt of court." *Id.* § 5251. Lawyers may use these enforcement tools in combination by, for example, adding a restraining notice to a subpoena. *See* Commentary, N.Y. C.P.L.R. § 5222 (McKinney) ("Some lawyers engaged in

7

enforcement work will serve the restraining notice of CPLR 5222 together with a subpoena under CPLR 5224, the former imposing a restraint with the latter pursuing an inquiry into the judgment debtor's assets.").

Thus, a creditor generally can enforce repayment of debts by bringing an action in New York courts against the debtor. Once judgment is entered in their favor, the New York Civil Practice Law and Rules authorizes a creditor's attorney to facilitate collection of the judgment by, inter alia, (1) restraining the movement of the debtor's assets through service of a restraining notice, (2) issuing an information subpoena for written responses to questions, or (3) initiating limited supplementary proceedings by a subpoena duces tecum requiring the production of materials for a debtor's examination at a particular time and place. The creditor's attorney need not seek leave or make a motion for a court to exercise these statutory enforcement tools. Rather, an attorney may exercise these tools directly as an officer of the court, though "[t]he court may at any time, on its own initiative or the motion of any interested person, and upon such notice as it may require, make an order denying, limiting, conditioning,

regulating, extending or modifying the use of any enforcement procedure." N.Y. C.P.L.R. § 5240.

**II.    Factual Background**

In February 2005, Debtor submitted an application to M.J. Peterson LLC, a real estate company, to rent an apartment on Englewood Avenue in Buffalo, New York. The rental application stated that the applicant's name was "William J. Wagner, Jr.," and listed a Social Security number for the applicant ending in the digits "06." App'x at 163. The application stated the Debtor had lived with his parents at his then-current address on 356 Hartford Road in Amherst, New York, since 1960, and listed an emergency contact living at 1571 Eggert Road in Amherst, New York.

M.J. Peterson and the Debtor executed a lease agreement. Beginning on September 1, 2005, however, the Debtor failed to pay rent. In response, M.J. Peterson hired Goldstein, Bulan & Chiari LLP—a predecessor of C&I—to collect the unpaid rent. C&I submitted a "skip-trace" to the U.S. Postal Service Office in Kenmore, New York, requesting that the Post Office provide the new address for

the Debtor. The skip-trace informed C&I that the Debtor's new address was 378 Windermere Boulevard, Amherst, New York.

C&I sued the Debtor for unpaid rent on behalf of M.J. Peterson in the City Court of the City of Buffalo, and on May 10, 2006, the court entered a default judgment of $1,437.15 against the Debtor. C&I listed the Debtor's address as 378 Windermere throughout the litigation, including for service of process, issuance of a summons, and in a collection letter and information subpoena following the default judgment. The Debtor did not comply with the information subpoena, and on August 8, 2007, the Buffalo City Court issued an order to show cause why it should not punish the Debtor with contempt. When the process server attempted to serve the show cause order at 378 Windermere, however, a resident explained that the Debtor no longer lived there.

C&I attempted unsuccessfully to locate the Debtor and communicate with him at various addresses for the next several years. C&I ran several credit reports, each of which returned three addresses associated with the Debtor: 356 Hartford Road, Buffalo, New York, which the Debtor previously listed as his

parents' address in his rental application; 1571 Eggert Road, Buffalo, New York, which the Debtor previously listed as the address of his emergency contact in his rental application; and 378 Windermere Boulevard in Amherst, New York. Service at 378 Windermere already had been unsuccessful, and the U.S. Postal Service informed C&I that the Debtor did not receive mail at 356 Hartford Road. In April 2011, C&I attempted service of an information subpoena and restraining notice at 1571 Eggert, but these were returned as undeliverable. C&I also sent a collection letter, information subpoena, and restraining notice by certified mail to a William J. Wagner, Jr. at another address, 102 Reiman Street in Buffalo, New York, but they were returned as unclaimed. In June 2011, C&I sent a subpoena duces tecum with a restraining notice for service at this address. When the process server attempted service, however, the occupant explained that the William J. Wagner, Jr. who had lived there left in May 2010.

In February 2015, C&I attorney Melissa Overbeck took over the case. She began by reviewing C&I's file for the case.[1] Overbeck also ran a credit report and an employment search for the Debtor, as well as searches on LexisNexis, a public records database, and Real-Info, a real-estate information database, inter alia.[2]

Overbeck's Real-Info search returned a result for a property located at the address 5419 Roberts Road, Hamburg, New York. The report stated that William and Julie Wagner owned the Roberts Road property. C&I did not retain the results of this Real-Info search, however, and Overbeck testified that she could not recall if the name associated with the Roberts Road address in the Real-Info report used the suffix 'Jr.' Nevertheless, C&I recorded its debt collection activity on an events log, which includes the entry: "Real-Info: Dbtr owns 5419 Roberts

[1] On appeal, Wagner disputes that Overbeck reviewed the physical file. Wagner has waived this argument, however, because he did not dispute before the district court that Overbeck reviewed the information in C&I's case file. *See* App'x at 374 at ¶ 2, 853 at ¶ 2.
[2] The February 2015 credit report identified the same three addresses as the previous credit reports—on Hartford Road, Eggert Road, and Windermere Boulevard—and did not identify 5419 Roberts Road as a potential address.

Rd. w/ wife." App'x at 511. After Wagner initiated this lawsuit, C&I ran a new Real-Info search. This report listed "William Wagner" as the owner of 5419 Roberts Road, App'x at 303. Based on this Real-Info report, C&I does not dispute that the original Real-Info report referred to the owner of 5419 Roberts Road as 'William Wagner,' not 'William J. Wagner, Jr.'

Overbeck also did not retain the record of the results of the LexisNexis search. The events log states of this LexisNexis search, "Lx-nothing current," App'x at 511, and Overbeck testified that this meant the LexisNexis search provided no current information for the Debtor. C&I ran another LexisNexis search for the Debtor's name on December 15, 2015, after Wagner filed his complaint. The results of this LexisNexis search included seven name variations for the Debtor, including "William J. Wagner," App'x at 294, and nine addresses associated with the Debtor's name, including 5419 Roberts Road, as well as the Eggert Road, Hartford Road, Windermere Boulevard, and Reiman Street addresses. This report identified four household members associated with 5419 Roberts Road: "Wagner, Andrew R," "Wagner, Julia Leona," "Wagner, William

13

G," and "Wagner, William J." App'x at 295. Overbeck's declaration explains that the LexisNexis report indicated that 5419 Roberts Road "was one of the top possible addresses" for the Debtor. App'x at 426.

Citing the December 2015 LexisNexis report and Overbeck's declaration, C&I argued before the district court that the LexisNexis report supported 5419 Roberts Road as a potential address for the Debtor. *See* App'x at 375 (Def.'s Rule 56.1 Statement ¶ 4). Overbeck testified that she concluded that the Debtor lived at 5419 Roberts Road because she "saw that William J. Wagner, Junior had an address listed of 5419 Roberts Road" on LexisNexis and "to verify that, [she] looked on the Real Info website and confirmed that William J. Wagner, Junior did own 5419 Roberts Road with his wife, the wife being listed as a spouse on the Lexis report." App'x at 322. Overbeck's declaration explains further that she "was confident that the debtor was currently residing at 5419 Roberts Road," App'x at 426, because of the mutually corroborating reports and because C&I already had ruled out several of the potential addresses contained in the reports.

14

Plaintiff-Appellant William J. Wagner, not the Debtor, owned the home at 5419 Roberts Road. Wagner was born in 1950, and the last two numbers of his Social Security number are "18." He has resided at 5419 Roberts Road in Hamburg, New York, since he purchased the property with his wife, Julia Wagner, in 1984. On April 23, 2015, Wagner and Julia Wagner transferred title to 5419 Roberts Road to Wagner. Neither Wagner, his sons Andrew R. Wagner and William G. Wagner, nor anyone else in their family uses the suffix 'Jr.' Though Wagner and the Debtor have almost identical names, they are not members of the same family, have never lived at the same address, and do not know each other.

On February 9, 2015, C&I sent a debt collection notice pursuant to New York Civil Practice Law and Rules § 5222 to 5419 Roberts Road.[3] The notice's

---

[3] N.Y. C.P.L.R. § 5222(d) mandates that a debt collector, prior to sending a restraining notice to a debtor, send a "Notice to Judgment Debtor or Obligor" that explains that "property belonging to [the Debtor] may have been taken or held in order to satisfy a judgment" entered against them, among other statutorily required items.

cover letter was addressed to "William J. Wagner Jr.," stated that it pertained to the "Claim of M.J. Peterson, LLC," and was written under the letterhead "Chiari & Ilecki, LLP Attorneys and Counselors at Law." App'x at 550. The letter stated,

> Please find the enclosed Notice pursuant to CPLR 5222. This communication is from a debt collector. The debt collector is attempting to collect a debt, and any information obtained will be used for the purpose.
>
> The current Judgment balance as of February 9, 2015 is $2,570.17. Note- because of interest or other charges that may vary from day to day, the amount due on the day you pay may be greater. If you pay the amount shown above, an adjustment may be necessary after we receive the payment, in which event we will inform you.

App'x at 550. Wagner knew that he had not conducted business with M.J. Peterson and understood that C&I was not attempting to collect a debt from him. Wagner called C&I on February 12, 2015—the same day he received the collection notice—and spoke with Karen Sandford, a legal assistant. Wagner informed Sandford that though he lived at 5419 Roberts Road, he was not the debtor, and he explained that his name did not use the suffix 'Jr.' and that the last

16

two digits of his Social Security number were "16."[4] Sandford told Wagner that she would inform an attorney. That same day, Sandford e-mailed Overbeck, stating, "A William Wagner called office who lives at the Roberts Rd address, claims not him. Gave me last 2 numbers of his SS# and didn't match with what we have." App'x at 514.

On February 11, 2015, C&I sent an information subpoena and restraining notice by certified mail addressed to "William J. Wagner, Jr." to Wagner's home. On February 15 and March 19, 2015, Wagner received notifications from the U.S. Postal Service that it was holding certified mail sent to "William J. Wagner, Jr." and "W. Wagner Jr.," respectively, at his address. App'x at 378-79, 857-58. Wagner understood that these communications were sent by C&I and intended for the Debtor and did not retrieve the letter from the post office.

---

[4] Wagner's statement of facts pursuant to Local Rule 56.1 states that the last four numbers of Wagner's social security number are "3918." App'x at 23. The reference to "16" appears to be an error. App'x 26.

Wagner called C&I on March 19, 2015, and spoke to Kristian Brown, a legal assistant. Wagner explained to Brown that he was not the Debtor, and he was "very upset" that he had continued to receive letters from C&I. App'x at 511. Wagner informed Brown that he was born in 1950, and Brown informed Wagner that an attorney at C&I had been e-mailed about Wagner's communications with C&I. Brown also stated that Wagner could send them a copy of his driver's license or Social Security number "if he'd like." App'x at 511. Though Wagner believed that C&I's initial communications were sent to him erroneously, based on his conversation with Brown and C&I's continued communications after the debt collection notice, he believed that C&I was "harassing" him, and attempting to collect a debt from him that he did not owe. App'x at 30. C&I contends that it never intended to collect a debt from Wagner, however, only from the Debtor.

The information subpoena was returned unclaimed on May 11, 2015. Shortly thereafter, C&I sent a subpoena duces tecum to a process server for service at 5419 Roberts Road. The subpoena duces tecum was addressed to "William J. Wagner, Jr.," and informed the recipient that the amount due had

grown to $2,603.83. App'x at 551. The subpoena ordered the Debtor to testify at a debtor's examination in Buffalo on July 7, 2015, and to produce written materials relevant to the debt. The subpoena also included a restraining notice, stating that "pursuant to subdivision (b) of 5222 of the Civil Practice Law and Rules, . . . you are hereby forbidden to make or suffer any sale, assignment or transfer of, or any interference with, any such property or pay over or otherwise dispose of any such debt, except as therein provided." App'x at 551. The subpoena warned that "disobedience of this restraining notice or . . . failure to comply with this subpoena may subject you to fine and imprisonment for contempt of court." App'x at 552. The letter conveying the subpoena duces tecum to the process server stated that the person to be served (the Debtor) was born in 1958, and explained that the process server should "be sure to serve the correct William J. Wagner" because C&I "believe[d] there is a William J. Wagner, Sr. and William J. Wagner, Jr. living at the same address." App'x at 501.

On June 5, 2015, before service of the subpoena duces tecum, Overbeck ran a search for the Debtor on LexisNexis. Overbeck's notes in the events log state

19

that the LexisNexis search indicated that it "looks like WW, Sr. and WW, Jr. live at the same address." App'x at 519. The events log noted that Overbeck had advised the process server to "be sure to serve [the] correct dbtr." App'x at 519.

On June 17, 2015, the process server served the subpoena duces tecum on Wagner at Wagner's home on Roberts Road. The process server's affidavit of personal service stated that the process server "knew the person [served] to be the person described as" the defendant, William J. Wagner, Jr. App'x at 503. Nevertheless, the affidavit also stated that "Defendant stated he was William Wagner, not the one we wanted. I asked him how old he was, he is 65 years old. He could have been what the dob listed: 1958." App'x at 503.

Wagner averred that he believed that the subpoena required his attendance at the debtor's examination. called C&I the same day and informed Sandford that he was served papers intended for the Debtor. Wagner reiterated that he was not the Debtor, explaining that no person using the suffix 'Jr.' lived at his address, and no one in his family used the suffix either. Sandford explained to Wagner that, based on a previous conversation with the legal assistant,

20

Kristian Brown, Wagner was to send C&I his driver's license, but C&I never received it.

The events log states that on June 29, 2015, Overbeck pulled the physical case file and confirmed the Debtor's Social Security number. The events log further recounts that Overbeck also reviewed a credit report, LexisNexis search, and DMV records, and "[c]onfirmed there is a William Wagner" with a Social Security number ending in the numbers '18,' born in 1950, that lived at Roberts Road, and that this Wagner was not the debtor. App'x at 512. Overbeck testified that these notations did not mean that the Debtor did not reside at 5419 Roberts Road; rather, she testified, "all that tells me is that there was a William Wagner living at the Roberts Road address with that date of birth and social security number. I had no idea if our debtor was residing there as well." App'x at 334. She also testified that the LexisNexis and Real-Info reports told her "that our debtor with the social security number that I looked up is linked to 5419 Roberts Road." App'x at 776.

21

C&I has no written policies concerning debt collection activity where (1) employees of C&I believe that a debtor may live at a particular residence, but are not certain; (2) C&I has information about the location of a person with a name similar to a debtor's; or (3) a non-debtor with a name similar to a debtor informs C&I that they are not the debtor C&I sought to contact. C&I attorney William Ilecki averred that when "more than one potential address for the debtor is identified," C&I "compares reports and the information in [C&I's] file and utilizes experience, common sense, and reasoned judgment to attempt to determine which address is most likely the correct one." App'x at 417. Ilecki's declaration explains that C&I does "not proceed until [C&I's attorneys] feel confident that [they] have the right address for the debtor. In the event that an individual calls [C&I] claiming that (1) the firm has directed collection efforts towards his residence, (2) he has a name similar to that of the debtor, and (3) the debtor does not reside with him, . . . [t]he legal assistant who takes the call requests that the alleged non-debtor provide verifiable proof of his identity (*e.g.*, date of birth or Social Security number) and may request the individual's driver's

22

license and Social Security card in order to confirm that he is not the debtor." App'x at 417-18. A C&I attorney then "checks the events log for developments in the case before undertaking any additional collection efforts. If the attorney concludes that the caller has provided verifiable proof that he is not the debtor and that the debtor does not reside at his address, [C&I] immediately stops collection efforts directed to the debtor at that address." App'x at 418.

In the event that the "caller refuses to provide verifiable proof of his identity, the attorney performs additional skip tracing, including carefully reviewing the information contained in [C&I's] file and also running additional searches (such as on Lexis or Westlaw), to confirm the debtor's address." App'x at 418-19. If C&I continues to believe that "the debtor resides at the address in question, [C&I] may continue to undertake collection efforts against the debtor at that address. In that case, [C&I] takes steps to ensure that communications are directed at only the debtor and not anyone else at that address." App'x at 419.

Wagner contends that C&I did not follow these unwritten policies in his case, to the extent that C&I had unwritten policies at all. He testified that C&I's

23

debt collection efforts caused him sleeplessness, nervousness, an upset stomach, and hypertension. Wagner explained, "I've been a person who has always paid any bills that I've owed. And to be basically accused of being a debtor and have to produce my financial records for people I don't even know, yes, that affects me greatly." App'x at 97.

On June 29, 2015, Overbeck informed Wagner's attorney that C&I would agree to a "general adjournment" of the subpoena duces tecum "pending the resolution of any alleged identity issues." App'x at 505.

## III. Procedural Background

On July 15, 2015, Wagner brought suit in the United States District Court for the Western District of New York, claiming that C&I's debt collection communications violated various provisions of the FDCPA, including 15 U.S.C. §§ 1692d, 1692e, 1692e(2), 1692e(5), 1692e(10), 1692f, and 1692f(1).[5] Following

[5] Section 1692e prohibits a debt collector from using a "false, deceptive, or misleading representation or means in connection with the collection of any debt," including in relevant part "[t]he false representation of . . . the character, amount, or legal status of any debt," "[t]he threat to take any action that cannot

24

discovery, Wagner moved for summary judgment on his claims under all provisions other than 15 U.S.C. § 1692f(1), and C&I cross-moved for summary judgment on all of Wagner's claims.

The district court granted C&I's motion. It held that C&I had not violated 15 U.S.C. §§ 1692e(5) or 1692f(1), reasoning that C&I had legal authority to pursue the collection of the debt in the precise amount owed, but was alleged merely to have attempted to collect the debt from the wrong person. The court further held that C&I's conduct was not "unfair or unconscionable" for purposes of 15 U.S.C. § 1692f, reasoning that Wagner had not actually attended the debtor's examination, and C&I adjourned the debtor's examination upon Wagner's attorney's request.

---

legally be taken or that is not intended to be taken," and "[t]he use of any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer." *Id.* §§ 1692e(2), e(5), e(10). Section 1692f prohibits the use of "unfair or unconscionable means to collect or attempt to collect any debt," including "[t]he collection of any amount . . . unless such amount is expressly authorized by the agreement creating the debt or permitted by law," *id.* § 1692f(1).

The district court held that C&I had violated 15 U.S.C. §§ 1692e, 1692e(2)(A), and 1692e(10), by serving Wagner with the subpoena duces tecum after Wagner had twice informed them that he was not the Debtor. It determined that the restraining notice was not actionable on its own, however, reasoning that under the least sophisticated consumer standard applicable in actions under the FDCPA, a non-debtor would not have been deceived by the first debt collection communication sent to him or her in error. Finally, concluding that the FDCPA's bona fide error defense, 15 U.S.C. § 1692k(c), applied to shield C&I from liability for its violations of 15 U.S.C. §§ 1692e, 1692e(2)(A), and 1692e(10), the district court granted C&I's motion and entered judgment for C&I.[6] This appeal followed.

---

[6] Wagner's complaint alleged that C&I's conduct violated 15 U.S.C. § 1692d, which prohibits debt collection conduct "the natural consequence of which is to harass, oppress, or abuse any person in connection with the collection of a debt." The district court granted summary judgment to C&I on this claim after concluding that Wagner abandoned it. Wagner does not challenge this conclusion on appeal.

26

**DISCUSSION**

"We review de novo the award of summary judgment, construing the evidence in the light most favorable to the nonmoving party and drawing all reasonable inferences and resolving all ambiguities in its favor." *Jaffer v. Hirji*, 887 F.3d 111, 114 (2d Cir. 2018) (internal quotation marks and alterations omitted). Summary judgment is appropriate if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "Material facts are those which might affect the outcome of the suit under the governing law, and a dispute is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Coppola v. Bear Stearns & Co.*, 499 F.3d 144, 148 (2d Cir. 2007) (internal quotation marks omitted).

**I. The Fair Debt Collection Practices Act**

The statutory purposes of the FDCPA are to "eliminate abusive debt collection practices by debt collectors, to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers

27

against debt collection abuses." 15 U.S.C. § 1692(e). "The legislative history of the passage of the FDCPA explains that the need for the FDCPA arose" because of a number of different "collection abuses," such as the use of "'obscene or profane language, threats of violence, telephone calls at unreasonable hours, [and] misrepresentation of a consumer's legal rights.'" *Kropelnicki v. Siegel*, 290 F.3d 118, 127 (2d Cir. 2002) (quoting S. Rep. No. 95–382, at 2 (1977), *reprinted in* 1977 U.S.C.C.A.N. 1695, 1696). The legislative history of the FDCPA is clear that the statute also was intended to "eliminate the recurring problem of debt collectors dunning the wrong person." S. Rep. No. 95–382, at 4, reprinted in 1977 U.S.C.C.A.N. at 1699. The report of the House of Representatives explained:

> This bill also protects people who do not owe money at all. In the collector's zeal, collection efforts are often aimed at the wrong person either because of mistaken identity or mistaken facts. This bill will make collectors behave responsibly towards people with whom they deal. . . . Certainly a person who has a common name and is being hounded by a debt collector because of the debts of another person deserves the protection this legislation will offer. In far too many cases debt collectors do not even bother to double check common names before beginning collection efforts.

H.R. Rep. 95–131 at 8 (1977).

28

Two principles guide our inquiry into whether a communication from a debt collector to a consumer violates the FDCPA. First, "the FDCPA must be construed liberally to effectuate its stated purpose." *Taylor v. Fin. Recovery Servs., Inc.*, 886 F.3d 212, 214 (2d Cir. 2018); *see also* 15 U.S.C. § 1692(e). Second, "[i]n evaluating potential violations of the FDCPA, the court must use an objective standard based on whether the least sophisticated consumer would be deceived by the collection practice," looking to "the impression likely to be left upon the unsophisticated consumer." *Maguire v. Citicorp Retail Servs., Inc.*, 147 F.3d 232, 236 (2d Cir. 1998) (internal quotation marks and alterations omitted).

"[W]e review claims of FDCPA violations under the so-called least-sophisticated-consumer standard in order to: (1) ensure the protection of all consumers, even the naive and the trusting, against deceptive debt collection practices, and (2) protect debt collectors against liability for bizarre or idiosyncratic interpretations of collection notices." *Kropelnicki*, 290 F.3d at 127 (internal quotation marks and alterations omitted). "Pursuant to this standard, a collection notice can be misleading if it is open to more than one reasonable

29

interpretation, at least one of which is inaccurate." *Taylor*, 886 F.3d at 214 (internal quotation marks omitted). "[E]ven if a debt collector accurately conveys the required information, a consumer may state a claim if she successfully alleges that the least sophisticated consumer would inaccurately interpret the message." *Carlin v. Davidson Fink LLP*, 852 F.3d 207, 216 (2d Cir. 2017). We have explained that "in crafting a norm that protects the naive and the credulous the courts have carefully preserved the concept of reasonableness, and some courts have held that even the least sophisticated consumer can be presumed to possess a rudimentary amount of information about the world and a willingness to read a collection notice with some care." *Altman v. J.C. Christensen & Assocs., Inc.*, 786 F.3d 191, 193-94 (2d Cir. 2015) (internal quotation marks and alterations omitted).

**II.     Whether C&I's Conduct Violated Sections 1692e and 1692f**

A single violation of Section 1692e or 1692f is sufficient to hold a debt collector liable under the FDCPA. *See* 15 U.S.C. § 1692k (authorizing the grant of actual and statutory damages against "any debt collector who fails to comply with *any* provision of this subchapter" (emphasis added)). While the same

30

conduct can violate Section 1692e or 1692f, "[e]ach section primarily targets a different type of misconduct, even as both sections share the goal of protecting consumers from abuse by debt collectors. Section 1692e mainly targets practices that take advantage of a debtor's naivete or lack of legal acumen. Section 1692f, meanwhile, is aimed at practices that give the debt collector an unfair advantage over the debtor or are inherently abusive." *Arias v. Gutman, Mintz, Baker & Sonnenfeldt LLP*, 875 F.3d 128, 135-36 (2d Cir. 2017).

The district court held that C&I violated only 15 U.S.C. §§ 1692e, 1692e(2)(A), and 1692e(10), not 1692e(5), 1692f, or 1692f(1). Wagner argues that this was error.[7]

We first consider whether the district court correctly concluded that C&I was entitled to summary judgment on Wagner's Section 1692e(5) claim. Section

---

[7] On appeal, Wagner contends that the district court erred in holding that the February 9, 2015 debt collection notice was not actionable under Section 1692e on the basis that it was the first debt collection communication C&I erroneously directed to Wagner. We need not address this portion of the district court's reasoning, however, because whether the court correctly held that C&I violated Sections 1692e, e(2)(A), and e(10) is not at issue on appeal.

1692e of the FDCPA makes it unlawful for a debt collector to "use any false, deceptive, or misleading representation or means in connection with the collection of any debt." 15 U.S.C. § 1692e. It also provides a "non-exhaustive" list of "particular practices that debt collectors are forbidden to employ," *Kropelnicki*, 290 F.3d at 127, including making "threat[s] to take any action that cannot legally be taken or that is not intended to be taken," § 1692e(5).

On appeal, Wagner argues that the district court erred in granting summary judgment to C&I on his Section 1692e(5) claim, because (1) under N.Y. C.P.L.R. § 5222(b), C&I lacked the right to serve a restraining notice on Wagner without first having "reason to believe" that Wagner was the Debtor; and (2) New York case law holding that a subpoena duces tecum cannot "be used as a fishing expedition for the purpose of discovery or to ascertain the existence of evidence," *Decrosta v. State Police Laboratory*, 581 N.Y.S.2d 938, 939 (3d Dep't 1992), prohibited C&I from serving Wagner with the subpoena duces tecum.

Neither of Wagner's arguments is persuasive. As to Wagner's first argument, New York law provides that a restraining notice served on a non-

32

debtor "is effective only if, at the time of service, he or she owes a debt to the judgment debtor or obligor or he or she is in the possession or custody of property in which he or she knows or has reason to believe the judgment debtor or obligor has an interest." N.Y. C.P.L.R. § 5222(b). Relying on this language, Wagner argues that "before a lawyer may serve a judgment debtor or garnishee, the lawyer must 'know[] or have reason to believe' that the person served is the judgment debtor or owes money to the judgment debtor." Appellant's Br. at 39-40. But Wagner misconstrues Section 5222(b), which plainly refers to the debtor's "reason to believe," not that of a debt collector or its lawyer.[8] Wagner's second argument fails because the case on which he relies, *Decrosta v. State Police Laboratory*, which considered a subpoena duces tecum sought under entirely

---

[8] Wagner makes a similar error in challenging the district court's ruling as to the restraining notice, relying on N.Y. C.P.L.R. § 5224(a)(3)(i), under which an information subpoena can be served "only if the judgment creditor or the judgment creditor's attorney has a reasonable belief that the party receiving the subpoena has in their possession information about the debtor that will assist the creditor in collecting his or her judgment." This provision governs information subpoenas, not restraining notices.

different statutory provisions by a criminal defendant to procure laboratory records to defend against pending criminal charges, is inapposite. *See* 581 N.Y.S.2d at 939.

We thus conclude that the district court did not err in granting summary judgment to C&I on Wagner's Section 1692e(5) claim. In sending the debt collection communications, C&I sought to collect on a valid judgment of the City Court of the City of Buffalo entered against the Debtor. The record at least establishes that C&I did not intend to send the debt collection communications to a non-debtor: in fact, Overbeck explicitly instructed the process server to serve the subpoena duces tecum on Wagner, Jr., not Wagner, Sr. Stripped of Wagner's non-meritorious theories as to why the debt collection communications were unlawful, it is only established here that C&I unintentionally sent otherwise valid and lawful debt collection communications to a non-debtor. *Cf. Currier v. First Resolution Inv. Corp.*, 762 F.3d 529, 535 (6th Cir. 2014) (allegation that debt collector filed and maintained a lien that was invalid under state law was sufficient to state a claim under Section 1692e(5)). This is insufficient to constitute

34

a violation of Section 1692e(5), and we therefore affirm the grant of summary judgment to C&I on this claim.

We also agree with the district court that C&I did not violate Section 1692f.[9] Under the FDCPA, a debt collector "may not use unfair or unconscionable means to collect or attempt to collect any debt." 15 U.S.C. § 1692f; *see also Todd v. Collecto, Inc.*, 731 F.3d 734, 739 (7th Cir. 2013) (collecting cases). "Although the FDCPA leaves the term 'unfair or unconscionable means' undefined, we have held that the term refers to practices that are 'shockingly unjust or unfair, or affronting the sense of justice, decency, or reasonableness.'" *Arias*, 875 F.3d at 135 (quoting *Gallego v. Northland Grp. Inc.*, 814 F.3d 123, 128 (2d Cir. 2016)).

*Arias* held that "a debt collector engages in unfair or unconscionable litigation conduct in violation of section 1692f when . . . it in bad faith unduly

---

[9] Wagner makes no argument as to why the district court's grant of summary judgment to C&I on his Section 1692f(1) claim was error, and thus we do not consider this issue. *See Norton v. Sam's Club*, 145 F.3d 114, 117 (2d Cir. 1998) ("Issues not sufficiently argued in the briefs are considered waived and normally will not be addressed on appeal.").

prolongs legal proceedings or requires a consumer to appear at an unnecessary hearing." *Id.* at 138. Wagner was never forced to attend a debtor's examination or to respond to the information subpoena, however, and C&I ultimately agreed to hold the subpoena duces tecum—which incorporated the restraining notice—in abeyance. While a debt collector's bad faith or abusive exercise of New York's statutory devices to collect on a judgment of a New York court from a non-debtor might constitute an "unfair or unconscionable" means of debt collection, the record does not establish such conduct here. Accordingly, we agree with the district court that C&I's conduct did not constitute "unfair or unconscionable means" of debt collection for purposes of Section 1692f, and C&I was entitled to summary judgment on this claim.

**III.    Whether the Bona Fide Error Exception Applies**

The FDCPA offers debt collectors an affirmative statutory defense for a violation of the FDCPA resulting from a bona fide error. The statute provides,

> A debt collector may not be held liable in any action brought under this subchapter if the debt collector shows by a preponderance of evidence that the violation was not intentional and resulted from a

> bona fide error notwithstanding the maintenance of procedures
> reasonably adapted to avoid any such error.

15 U.S.C. § 1692k(c). Thus, under the statute, a "debt collector asserting the bona fide error defense must show by a preponderance of the evidence that its violation of the Act: (1) was not intentional; (2) was a bona fide error; and (3) occurred despite the maintenance of procedures reasonably adapted to avoid any such error." *Edwards v. Niagara Credit Sols., Inc.*, 584 F.3d 1350, 1352-53 (11th Cir. 2009). While the bona fide error defense does not extend to intentional violations caused by mistakes of law, it does shield from liability unintentional "violations resulting from qualifying factual errors." *Jerman v. Carlisle, McNellie, Rini, Kramer & Ulrich LPA*, 559 U.S. 573, 594 (2010).

On appeal, Wagner argues that the district court erred in granting summary judgment to C&I because a reasonable jury could conclude that C&I failed to establish one or more of the three prongs of the bona fide error defense. We address each prong in turn.

The district court concluded that no reasonable jury could find that the preponderance of the evidence established that C&I intentionally sent the

37

subpoena duces tecum to a non-debtor, citing Overbeck's instruction to the process server to serve Wagner Jr., not Wagner Sr., and Overbeck's search on LexisNexis shortly before the subpoena was served to confirm the Debtor's connection to 5419 Roberts Road. We agree.

We nevertheless hold that C&I was not entitled to summary judgment on Wagner's claims because a reasonable jury could find that C&I's error was not bona fide and that C&I did not maintain procedures reasonably adapted to avoid its error. Wagner twice informed C&I that he was not the Debtor before he was served with the subpoena duces tecum and restraining notice. C&I knew that the digits of Wagner's Social Security number that Wagner provided did not match that of the Debtor. Overbeck also knew from reviewing the events log that the Debtor's birthyear was 1958, and that Wagner told C&I that his birthyear was 1950. The December 2015 LexisNexis report—which C&I has proffered as a replacement for the search Overbeck ran before contacting Wagner—provided corroboration for Wagner's calls, listing a "Wagner, William J.," associated with 5419 Roberts Road and born in 1950, as a potential relative of the Debtor. This

38

birthyear would have made Wagner too old to be the Debtor, and too young to be his father. And, the LexisNexis report identified a "Wagner, William G." associated with 5419 Roberts Road, who was born in 1977. In short, the LexisNexis report could be understood to state that two related William Wagners lived at 5419 Roberts Road, but neither was the Debtor.

C&I relies on the Real-Info and LexisNexis reports to justify its pursuit of the Debtor at Wagner's address. Yet, C&I concedes that both reports identified 'William J. Wagner,' not 'William J. Wagner, Jr.' as the owner or resident of 5419 Roberts Road. While the former name could be an abbreviated form of the latter, the December 2015 LexisNexis report lists the dates for which Wagner was associated with the 5419 Roberts Road address as May 1985 to April 2015. This is inconsistent with the Debtor's residence in a rental in Buffalo in 2005; the same LexisNexis report, which stated that the Debtor lived at 356 Hartford Road—the Debtor's parents' address—from October 1986 to October 2015; and the Debtor's rental application, which stated that he had lived with his parents in Amherst, New York since 1960. In short, C&I was in possession of more than enough

39

evidence that Plaintiff was neither the Debtor nor the Debtor's father to permit a reasonable jury to conclude that C&I's mistake, even if honestly made, was not made in good faith.

A reasonable jury could also conclude that C&I did not maintain procedures reasonably adapted to avoid its error. C&I concedes that it had no written policies for situations in which employees of C&I believe that a debtor may live at a particular residence, but are not certain; C&I has information about the location of a person with a name similar to a debtor's; or a non-debtor with a name similar to a debtor informs C&I that they are not the debtor C&I sought to contact. Though C&I maintains that it has unwritten policies addressing these circumstances, Ilecki averred that when "more than one potential address for the debtor is identified," C&I "compares reports and the information in [C&I's] file and utilizes experience, common sense, and reasoned judgment to attempt to determine which address is most likely the correct one," and C&I does "not proceed until [C&I's attorneys] feel confident that [they] have the right address for the debtor." App'x at 417. In light of the evidence available to C&I that

40

Wagner was not the Debtor, a reasonable jury could conclude that a "feel[ing]" of "confidence" based on "experience, common sense, and reasoned judgment," App'x at 417, does not constitute a specific policy reasonably adapted to avoid the error at issue—"the kind of internal controls a debt collector might adopt to ensure its employees do not" dun the wrong person, *Jerman*, 559 U.S. at 587. Further, in light of C&I's continued debt collection efforts despite possessing evidence that could reasonably be understood to refute a connection between Wagner and the Debtor, and Wagner's repeated calls expressing that he was not the Debtor, a reasonable jury could conclude that C&I either did not have or did not follow what Ilecki claimed were its unwritten policies.

Ilecki identifies several specific policies that C&I contends were sufficient for purposes of the bona fide error defense, including that (1) if a purported non-debtor refuses to provide verifiable identifying information, C&I reviews C&I's file and runs "additional searches (such as on Lexis or Westlaw), to confirm the debtor's address," and (2) if C&I concludes that the debtor nevertheless lives at the purported non-debtor's residence, it "takes steps to ensure that

41

communications are directed at only the debtor and not anyone else at that address." App'x at 418-19. But a reasonable jury could conclude that C&I's "additional searches" were insufficient to avoid their error because C&I merely replicated the LexisNexis search C&I had relied on before Wagner informed C&I of his identity. And, a reasonable jury could conclude that Overbeck's instruction to the process server to "be sure to serve the correct William J. Wagner," App'x at 501, was insufficient, given that C&I had identifying information for Wagner such as his year of birth that could have allowed the process server to avoid dunning Wagner.

We therefore conclude that a reasonable jury could find that C&I did not make a bona fide error within the meaning of the FDCPA, and accordingly hold that the district court erred in granting summary judgment to C&I.

## CONCLUSION

For the foregoing reasons, we affirm in part and vacate in part, and remand the judgment of the district court for further proceedings consistent with this opinion.